(33 App. Div. 282.)

### PEOPLE v. MARTIN.

(Supreme Court, Appellate Division, Third Department. September 13, 1898.)

**1. HOMICIDE—INTOXICATION—INTENT—PROVINCE OF JURY.**

Where the fatal blow was inflicted by defendant while he was under the influence of liquor, an instruction, on a trial for murder, that, if defendant struck the blow designedly, he was presumed to have intended the probable consequences of the act, was erroneous; the question of intent being for the jury, under Pen. Code, § 22, authorizing the jury to take defendant's intoxication into consideration on the question of intent.

**2. SAME—INSTRUCTIONS—ERROR CURED.**

Such error was not remedied by a subsequent charge that, if defendant struck the blow without design, he might be convicted of manslaughter or a lesser offense, and that, in order to commit murder, defendant must have had a homicidal intent.

Thomas F. Martin was convicted of murder in the second degree, and he moves for a new trial. Granted.

Argued before PARKER, P. J., and LANDON, HERRICK, MERWIN, and PUTNAM, JJ.

John H. Gleason, for appellant.

John T. Cook, for the People.

PUTNAM, J. The defendant was indicted by the grand jury of Albany county at a session of the county court held in September, 1896, for the crime of murder in the second degree, in willfully and feloniously, with a wooden club, on the evening of July 23, 1896, in the city of Albany, assaulting and causing the death of one Michael Lanahan, with intent to effect such death. The defendant was tried for such alleged offense in February, 1897, before said court, convicted, and sentenced to imprisonment for life in the state prison at Dannemora. At the time of the homicide in question, the deceased, defendant, and others were together. The parties had been drinking, and it is probable that all were more or less under the influence of liquor.

Murder in the second degree is defined in section 184 of the Penal Code as follows: "Such killing of a human being is murder in the second degree, when committed with a design to effect the death of the person killed, or of another, but without deliberation and premeditation." Homicide is manslaughter in the first degree "when committed without a design to effect death either (1) by a person engaged in committing, or attempting to commit, a misdemeanor, affecting the person or property, either of the person killed, or of another; or (2) in the heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon." Pen. Code, § 189. Whether, therefore, the defendant, in effecting the death of Lanahan, was guilty of murder in

the second degree, or of manslaughter in the first degree, depended on his intent. If he struck the deceased with a club with an intent to cause his death, his offense was murder; if his act was with an intent merely to injure Lanahan, and not to cause his death, his crime was manslaughter.

The trial judge in his charge used the following language:

"A man is presumed to intend the natural, necessary, and even the probable consequences of any act that he intentionally or designedly does. Therefore, if you find that Martin committed this act intentionally and designedly, he is presumed to intend to have accomplished, and known the probable consequences of, that act. That is the law of this state."

The trial judge might properly have said that, if the defendant intentionally struck the blows that caused the death of Lanahan, the jury was authorized to presume that Martin intended to accomplish the probable consequences of his act; but it was, I think, incorrect to say that the law raised such a presumption. The question of the intent of Martin was one of fact for the jury. It has been held that:

"To constitute crime, there must not only be the act, but also the criminal intention, and these must concur, the latter being equally essential with the former. 'Actus non rerum facit, sed mens,' is a maxim of the common law. The intention may be inferred from the act, but this, in principle, is an inference of fact to be drawn by the jury, and not an implication of law, to be applied by the court." Stokes v. People, 53 N. Y. 164–179.

In People v. Baker, 96 N. Y. 340, 341, where "the court charged the jury: 'If you find that the defendant made the representations charged in the indictment; that they were, and that the defendant knew they were, false when he made them,—then the law presumes the fraudulent intent,'—held error; that while the jury might, from all the facts, infer such an intent, it was not an inference of law."

In People v. Conroy, 97 N. Y. 76, it was said:

"There is no legal presumption, arising from the mere proof of the commission of a homicide, that concludes the jury from finding, upon such evidence alone, that there was not such deliberation and premeditation as constitutes the crime of murder in the first degree, or but that the act was justifiable or excusable."

In People v. Fish, 125 N. Y. 153, 26 N. E. 319, where the court had charged the jury: "If the defendant, while in the possession of his faculties sufficiently to conceive a design, voluntarily and willfully did an act which had a direct tendency to destroy another's life, the jury would have a right to presume from that fact that he intended the natural consequences of his own act,"—this charge was held correct. In the opinion the following language was used:

"The jury were bound to find that the defendant was capable of forming an intent, and that he did form the intent, and that he willfully and voluntarily dealt the blow, and they were permitted to infer or presume from these facts that he intended the fatal blow which he inflicted. The court did not lay down the rule that they were bound, as a matter of law, to presume it, or that the law implied that the defendant intended the natural consequences of his act."

In that portion of the charge of the trial judge above quoted he gave the jury instructions condemned in the authorities above cited,—that, if Martin intentionally struck the blow that caused the death of Lana-

han, he is presumed to have intended to have accomplished the probable consequences of his act.

The evidence renders it probable that the act of the defendant which caused the death of Lanahan occurred during a drunken affray. The parties were probably all more or less intoxicated. Martin, being under the influence of liquor, although he intended to strike, might not have been able to measure or appreciate the effect of his blows, as he would had he been entirely sober. Hence the portion of the charge above referred to was objectionable under section 22 of the Penal Code, which provides that:

"Whenever the actual existence of any particular purpose, motive or intent is a necessary element to constitute a particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive or intent with which he committed the act."

Under this statute, the intent of the defendant in striking Lanahan with a club was a question to be determined by the jury. The questions that should have been submitted for the jury's determination were: Did defendant strike the blows, the probable consequence of which was the death of Lanahan, intentionally? Did he design by those blows to accomplish such death? The trial judge went too far in saying to the jury that, if Martin struck the blows intentionally, it was to be presumed that he intended to accomplish the probable consequence thereof. Although the defendant struck the blows designedly, his intent in so doing, whether to injure the deceased or cause his death, was a question to be passed upon by the jury as a question of fact, and should not have been determined by the court. And this was the case whether the defendant was sober or intoxicated at the time. As stated in the authorities cited, the inference as to Martin's intent was one "of fact, to be drawn by the jury, and not an implication of law, to be applied by the court."

I do not find that the instruction thus given to the jury in that portion of the charge above quoted was afterwards modified, explained, or withdrawn by the trial judge. It is true that he subsequently said to the jury that, if they found that the defendant inflicted the blows that caused the death of Lanahan without any design to effect such death, they could convict the defendant of manslaughter in the first degree or some lesser offense. But the judge did not withdraw what he had previously said, that, if Martin did the act—that is, inflicted the blows—intentionally, he is presumed to intend to have accomplished, and known the probable consequences of, that act. Although the jury were instructed that, to commit murder in the second degree, they must find a homicidal intent on the part of the defendant, they were also told that that intent was presumed from the intentional striking of the blows, the probable result of which was the death of the deceased. I think, as was said in People v. Corey, 148 N. Y. 493, 42 N. E. 1072, "The peculiar language of the charge is such that, at least, it may have misled the jury." Under the evidence in the case, it is quite doubtful whether the defendant intended to accomplish the death of Lanahan, and whether his offense was not in fact manslaughter. The question of his intent should have been sub-

mitted to the jury as one of fact. I therefore conclude that this is a case where, under the provisions of section 527 of the Code of Criminal Procedure, justice requires us to grant to the defendant a new trial. All concur.