(81 App. Div. 567.)

## PEOPLE v. WEAVER.

(Supreme Court, Appellate Division, Fourth Department. March 10, 1903.)

1. FORGERY—AUTHORITY TO INDORSE NOTE—EVIDENCE—SUFFICIENCY.
    Evidence on a prosecution for the forgery of an indorsement on a note examined, and *held* insufficient to show that defendant had authority to sign the indorser's name, or that she had reasonable grounds for believing that she had such authority.

2. SAME—INTENT TO PAY.
    The intention of a person who has indorsed the name of another on a note without authority to pay the same at maturity is no defense to a prosecution for forgery.

3. SAME—RATIFICATION.
    Nor was her belief that such person would ratify her act a defense.

Appeal from Monroe County Court.

Alice M. Weaver was convicted of forgery in the second degree, and appeals. Affirmed.

Argued before ADAMS, P. J., and SPRING, WILLIAMS, HISCOCK, and NASH, JJ.

George Raines, for appellant.
Robert Averill, for the People.

NASH, J. The indictment charges the defendant with having forged the name of Martin Davis as indorser on a promissory note for $1,200, and also, in a separate count, with having uttered and disposed of and put off the same as true. The proof was that the defendant signed the name of Davis as indorser upon the note without authority, and that she presented the note to the cashier of the Commercial Bank of Rochester, the place where the same was made payable, for discount, and procured it to be discounted. The note bears date September 17, 1900, was made by the defendant, and purports to have been indorsed by Harriet E. Wells, the person named therein as payee, who is the mother of the defendant, and by Martin Davis. The defendant, as a witness in her own behalf on the trial, testified: That she presented the note at the bank for discount with the name of her mother indorsed upon it. The cashier required Davis' name on the note. That she went to the office of Mr. Davis for the purpose of obtaining his signature, and not finding him, and wanting the money that day, she signed his name as indorser. As bearing upon the question of the intent with which the defendant wrote the name of Davis as indorser upon this note, the forgery by the defendant of his name as indorser upon her note for $5,000 on the 9th of August previous, which she procured to be discounted at the Traders' Bank, was proved.

The defendant having stated in the course of her examination as a witness that she was not, at the time of the commission of the forgery charged in the indictment, aware of the serious character of her act, or that it was criminal, it was shown that a forgery of the name of her husband upon a note for $1,000, discounted by the Alliance Bank, had been committed, and, upon the discovery of the forgery in June previous, the defendant was informed that unless the matter was arranged she would be prosecuted for the forgery. To save her from prosecution, the matter was arranged by a note made by her husband, or upon which he became indorser. It appears that the defendant took $1,000 of the avails of the discount of the $1,200 Davis note to her husband, and they together went to the Alliance Bank with the money, and paid the note which took up the note previously forged. The fact that other forgeries were committed by the defendant was brought out upon her cross-examination. She admitted that she signed the names of her mother and her husband as indorsers upon a note of July 10, 1900, for $1,500, at the Traders' Bank, and another note at the same bank for $1,000, dated August 9, 1900, and that she signed the names of her mother and husband as indorsers upon the $5,000 note at the Traders' Bank.

There was no defense to the crime charged in the indictment. The fact that the defendant signed the name of Davis without authority

was admitted by the defendant on her examination as a witness in her own behalf, and also that she procured the discount of the note. The defense sought to be interposed, as stated by defendant's counsel in his brief, was the "consummate and reasonable belief that Davis would ratify and sanction her writing of his name in carrying the household debt of Mr. Weaver," and therefore there was an absence of wrongful or criminal intent. His summary of facts by which it was sought to establish the absence of fraudulent intent is stated in his brief as follows:

"Martin Davis was the schoolmate and most intimate friend of her husband. A debt of Simon J. Weaver for household expenses accumulated from 1895 to 1900, until it was about $10,000, which Mrs. Weaver, at the request of Mr. Weaver, because of his partnership arrangements, commenced in January, 1898, to carry on her notes, with her mother's indorsement, in the banks of Rochester, with Martin Davis as a steady indorser on all papers where another than Mrs. Wells was required to the note in question, except the $5,000 Traders' Bank note. Mrs. Weaver was given by Mr. Weaver an allowance of about $100 a month for family expenses during these years, which paid the $60 monthly to servants and the house rent. All other bills went into debt, and were carried by her notes, on the theory that Mrs. Weaver was to receive about $25,000 from her mother by a sale of her interest in Struthers, Wells & Co., in Warren, Pa., which money Mr. Weaver and Mrs. Weaver desired should wipe out this debt when it should be received. The sale was expected monthly in 1900, and Mrs. Weaver was two-thirds owner of her mother's interest in that firm. Simon J. Weaver was at all times a member of the hardware firm of Weaver, Palmer & Richmond, at the head of the business for fifteen years, one-third owner, and a wealthy man, who desired his friend Davis to indorse for his wife in carrying the debt for the purpose of keeping his own name out of the banks, under alleged partnership arrangements, and for the secret purpose of binding Mrs. Wells and Mrs. Weaver to the debt for his household expenses, and its payment as above contemplated from their properties standing in Mrs. Wells' name."

That the existence of any one of these facts, or all combined, created in the mind of Mrs. Weaver the belief that she had the right to put the name of Martin Davis, or the names of her mother and husband, upon promissory notes, and pass them at the banks as genuine, must, we think, be regarded as unworthy of serious consideration. The suggestion is that Mrs. Weaver believed she had the right to indorse the name of Davis and of her mother and husband, without their knowledge, upon promissory notes, and pass them at the banks as genuine, which Davis, as the most intimate friend of her husband, was more than willing to indorse, upon which was also the name of her husband, whose name was to be kept out of the banks, and upon which, for the purpose of binding Mrs. Wells to pay the debt of her husband, her name was also forged. There is not a fact stated which suggests the right to indorse the name of either Martin Davis or Mrs. Wells upon promissory notes. It is expressly stated that the name of Mr. Weaver was to be kept out of the banks. The defendant did not act upon any such supposed authority. She testified that she went to the office of Mr. Davis to obtain his signature. If she indorsed his name in the belief that she had authority, or the names of her mother and husband, there was no occasion for keeping her acts secret. Besides, she was informed by Mr. Davis that he did not wish his indorsements to exceed $1,000. The mind of the defendant as a witness in her own behalf

did not rise to the occasion, nor respond to the defense suggested, although given full opportunity and pressed by her counsel:

"Q. State why you put the name of Simon J. Weaver on the back of the $5,000 note, and state it fully? A. Because I thought he was the one to pay it, and I had every reason to believe he was good for it and would pay it. Q. Why? A. I don't know of any further why. Q. You have a right to state why you put the name on. I want you to state fully why. A. It went to pay his household bills, and to take up an obligation of his."

Being permitted by the court to state why she made the $1,200 Davis note, and put his name on it, and what induced her to do it, she answered:

"My belief was— I expected these funds I had been talking about, and I would have.means to take care of it, and, if I did not, that my husband would take care of it for me."

To sum up in brief as to the entire matter offered as a defense upon the trial, there was not a suggestion of proof that Martin Davis, by anything he said or did, gave to the defendant any authority whatever, either directly or indirectly, to indorse his name on the note set out in the indictment, nor upon any promissory note. Nor does the statement of counsel in his brief indicate that any such proof was offered or excluded. He says:

"The ruling of the court throughout the trial was that neither ability, belief in ability, nor intention to pay this paper, nor present.worth of the note, was admissible on her criminal intention, and much less on her intent to defraud, or belief in ratification."

We can see no suggestion of error in this, and, as to the essence of the suggested defense, it may be said that, unless the name of Davis was indorsed upon the note under such circumstances that he could have been charged as indorser, the bank was defrauded, and, if defrauded because of the want of authority to indorse Davis' name, the uttering of the note was conclusive evidence of intent to defraud, and constituted the crime of forgery in the second degree.

The point is made that "the court erred in charging the jury in what the intent to defraud in this case consisted, and what matters they should consider as proving intent to defraud." The request to charge, and the refusal, and the charge as made, to which this point is applicable, appear in the record as follows:

"Mr. Raines: I ask the court to charge the jury that if the jury are satisfied that the evidence established Mrs. Weaver's intention to pay the note at maturity, and are satisfied that a reasonable inference with regard to her criminal intention may be drawn therefrom, they are authorized to draw that inference and apply it, with all the other evidence in the case, to the decision of the question whether there was a criminal intention on her part. The Court: The evidence as to her intention to pay the note at maturity does not bear upon the question whether or not she had a fraudulent intent in negotiating this note at the bank. I decline to charge that. Mr. Raines: I mentioned only criminal intent in my request. The Court: I decline to charge as requested, and say that her intention to pay the note at maturity does not bear legitimately upon the question of her criminal intent in negotiating the note at the bank in the first instance. (Exception by the defendant's counsel.) Juror 10: If Mrs. Weaver believed Martin Davis would ratify the name on the note, was she guilty of criminal intent? The Court: That depends on whether she believed that Martin Davis would recognize her act as a proper and right act, which she had a right to perform. Mr. Raines: I ask the

court to charge the jury negatively in answer to the question of the juror. The Court: I will charge you this, gentlemen: that if her expectation that he would ratify that act was based merely upon the expectation that, because he was her friend, he would stand by that indorsement, rather than see Mrs. Weaver get into trouble, then that is no excuse or defense in this case. But if she expected honestly that Davis would stand by his signature, because it was right and proper for her to put it on the note—believed that Davis would recognize that she had a right to put it there—then, of course, she cannot be guilty of criminal intent; but, when you consider whether she had any such belief, you should not close your eyes to the evidence as to whether there was any justification for such a belief. You should consider in such connection whether there is anything in the case which would give a rational person the right to believe that Davis would stand by his signature; that Davis would say that it was all right for her to write his name on there. Now, is there anything in the evidence here— is there anything in the relations of the parties, or in the events as they occurred—which could have given Mrs. Weaver the right to believe that he would stand by his signature on this note? If you find that there are no such circumstances in the case warranting such a belief on her part, that is proper for you to consider when you make up your mind whether she had any such belief or not. People's beliefs are ordinarily founded on some basis. People that are sane and come to their conclusions by the ordinary processes of reasoning have some ground, or color of ground, for their beliefs, ordinarily. Now, is there anything in this case which naturally would have given Mrs. Weaver the right to expect that Martin Davis would say, when he was informed she had put his name on the note, would say that it was right; that it was proper? Is there anything in the case which would warrant her in any such expectation? That is what you are to consider in connection with her statement that she thought he would ratify or sanction the use of his name."

We regard this as an admirably clear and lucid statement of the correct proposition of law applicable to the case. It is strictly within the rule stated in the case of People v. Stevens, 109 N. Y. 159, 16 N. E. 53, that, where the intent is a material element of the offense, belief must have some colorable ground or basis.

The defendant's counsel urges upon our attention the parts of the charge relating to the question of intent, quoted in his brief as follows:

"Now, the bank did not get Martin Davis' genuine indorsement, but she wrote his name on it, and Swanton thought it was genuine, and, relying upon its genuineness, he discounted the paper, and she got the $1,000 in cash. The result of the transaction was, gentlemen, that the bank was defrauded, because it did not receive in exchange for its cash the note which it had a right to believe it was getting. Mrs. Weaver representing by her act that it was the genuine indorsement of Davis, they had a right to believe her; and if they paid her the money upon the note in that reliance, and as a result of her act, then she actually defrauded this bank. Now, the question is, did she intend to defraud the bank? Did she intend actually to defraud the bank, not by some mere mistake of hers, not through ignorance or carelessness, but did she deliberately intend that which was actually accomplished? Did she intend to cheat and defraud the bank? Now, gentlemen, the court cannot direct you to find the defendant guilty. That would be an invasion of your jurisdiction."

The court proceeded further:

"I cannot even suggest to you that you should find her guilty. I must leave the whole matter upon your consciences and upon your intelligence. But I am permitted to say that, in judging whether Mrs. Weaver intended to defraud the bank or not, you have a right to use that presumption which exists, that a person intends the ordinary result and consequence of his act; that, when a certain course of conduct ordinarily and necessarily produces a cer-

tain result, the person who does that act which produces that result intends that that result shall follow."

Counsel, complaining of this, says:

"The court could not in more unmistakable terms have charged the jury that their inquiry was confined to the delivery of the false note to the bank, and receiving the money thereon, in determining her intent to defraud. The court refused to allow the evidence Mrs. Weaver had given, and which the law permitted her to give, as a witness, as to her means and ability to pay the note, and intention to pay the note, to be considered, with the other evidence in the case, on her intent in the transaction, but distinctly charged the jury that they bore neither on fraudulent nor criminal intent."

Having correctly charged that her means and ability to pay the note, and intention to pay the note, could not be considered in determining the question of her intent, the court could have very properly charged the jury, in the language of counsel, that their inquiry should be confined to the delivery of the false note to the bank, and receiving the money thereon, in determining her intent to defraud. There was no other competent evidence in the case bearing upon the question of intent to defraud. The defendant wholly failed to show any authority, either expressed or implied, or any facts or circumstances under which she could claim any authority, to indorse the name of Martin Davis. The act of presenting the false signature of Davis, which she had made as genuine, and receiving the money, defrauded the bank. It was a fraudulent act, from which the conclusion that there was an intent to defraud is a necessary inference, and which could not be repelled except by evidence of authority from Davis, as to which, as already stated, there was an entire absence of evidence. The effort of the defense throughout the trial seems to have been to force upon the court evidence in support of the idea that intent to defraud is something which must be found in addition to the fraudulent act, to constitute the crime, as in the case of the People v. Baker, 96 N. Y. 340, where, in addition to proving the false pretenses by which the property was obtained, it was held that evidence must be given that the false pretenses were made with intent to cheat and defraud. Here the criminal mind and intent to defraud went with the act, as an ingredient of and a component part of it.

We are unable to find in the very voluminous record of the trial any error committed by the trial court in the rulings adverse to the defendant.

Judgment of conviction affirmed. All concur.