(87 Misc. Rep. 89)

## PEOPLE v. JOHNSON.

### (Supreme Court, Criminal Term, Erie County.   September, 1914.)

1. LARCENY (§ 1*)—"COMMON-LAW LARCENY."
    "Common-law larceny" is that form of larceny where the defendant furtively, without the consent of the owner, takes his property, or forcibly takes it without his consent or against his will, or where the defendant accomplishes larceny by trick, device, or artifice, and the owner has not parted with his property absolutely, but only temporarily with its possession.

    [Ed. Note.—For other cases, see Larceny, Cent. Dig. § 1; Dec. Dig. § 1.*
    For other definitions, see Words and Phrases, First and Second Series, Larceny.]

2. FALSE PRETENSES (§ 49*)—LARCENY (§ 55*)—SUFFICIENCY OF EVIDENCE.
    Evidence *held* insufficient to authorize the conviction of a contractor for public work on the highways of either common-law larceny or larceny by false pretenses, where it showed that the state had voluntarily made its drafts and checks payable to the order of defendant, and parted absolutely with the money represented by these instruments, and there was

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

no proof of conspiracy, or that defendant had made any representations to secure the payments.

[Ed. Note.—For other cases, see False Pretenses, Cent. Dig. § 62; Dec. Dig. § 49;* Larceny, Cent. Dig. §§ 152, 164, 165, 167–169; Dec. Dig. § 55.*]

John E. Johnson was charged with grand larceny in the first degree, and moves for direction of a verdict. Decision for defendant.

Wesley C. Dudley, Dist. Atty., of Buffalo (Guy B. Moore, Asst. Dist. Atty., of Buffalo, of counsel), for the People.

Daniel J. Kenefick, of Buffalo (Henry W. Killeen, of Buffalo, of counsel), for defendant.

BISSELL, J. The defendant is charged with the commission of the crime of grand larceny in the first degree. The first count of the indictment charges the commission of common-law larceny, so called, and the second count charges the commission of larceny by false pretenses. It must appear that the people have established the crime of larceny under one or the other of these counts, or the indictment must be dismissed, and the defendant acquitted.

[1, 2] In my opinion the prosecution has failed to establish common-law larceny, which is defined as the form of larceny where the defendant furtively, without the consent of the owner, takes his property, or forcibly takes it without his consent or against his will, or where the defendant accomplishes larceny by trick, device, or artifice, and the owner has not parted with his property absolutely, but only temporarily with its possession. The proofs in this case show that the state of New York, through its highway department, voluntarily made its drafts and checks to the order of, and forwarded them to, the defendant, and parted absolutely with the money represented by these instruments, so that the proofs do not bring the crime, if a crime has been committed, under the first count in the indictment.

If the defendant has been guilty of the crime of larceny by false pretenses, it must appear that the money of the state was obtained by false representations made by the defendant, that in reliance thereon and under the inducement thereof the state parted with its money, and that the false pretenses were made with intent to cheat and defraud the state. The proofs do not disclose that the defendant made any representations whatever. He did not present a written verified claim or voucher for money. He did not make any oral statements or representations to induce the state to part with it.

It was established by the prosecution that the defendant entered into three contracts with the state, providing for the resurfacing of Clinton street from a point 1,300 feet easterly from the center of Union road in the town of West Seneca to a point 2.79 miles distant westerly therefrom. The original contract provided for the furnishing of the materials and labor for this work for a total sum of $62,004.14, and two supplemental agreements were entered into for extra work, aggregating $12,084.81, making the total amount of the contract price for all of the work to be done the sum of $74,088.95. The defective work

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

involved in the indictment in this case relates to the concrete edging specified to be constructed upon the sides of the brick roadway, being 29,550 lineal feet, to be paid for at the price of 15 cents per lineal foot, or the total sum of $4,432.50.

The proofs show that only about 7,000 feet of this edging were constructed of fairly good concrete; that none of it was constructed 8 inches in width, as specified, but only 6 inches in width, and that about 22,000 lineal feet of it, and probably all of it, were not in any respect the second-class Portland cement concrete called for by the specifications attached to the contract. It appears, however, that estimates, so called, of which there are two in evidence, were prepared by the bureau of maintenance and repairs of the state department of highways certifying to the work done, sworn to by two certain highway inspectors in charge and approved by the superintendent of repair, the first deputy highway commissioner, and, finally, by the highway commissioner of the state. Upon these estimates made by the department itself the payments were made by the highway department to the defendant. The first of these verified and approved estimates, dated November 16, 1912, showed a total of work done according to the original contract and the first supplemental agreement amounting to $42,343.53, which included the sum of $4,432.50 for 29,550 lineal feet of concrete edging in place complete. Ten per cent. of this estimate, or the sum of $4,234.33, was deducted and retained by the state under the clause in the contract providing that:.

"Payment to the contractor will be made monthly to an amount not exceeding 90 per centum of the work done. Ten per centum of the contract price will be retained until the entire work has been completed and accepted."

Upon this first estimate, made by the highway department without any communications or vouchers or representations of any kind from the defendant, the state paid the defendant the sum of $38,109.18. The contract also provides that:

"The approval of materials or workmanship by the engineer in charge, or any employé of the department, does not under any consideration preclude the right of the commission to reject all or any part of the same at any time previous to the payment of the final estimate."

It does not appear that a final estimate has ever been made, and it appears that the sum of $18,663.86 has been, and still is, retained by the state from the total contract price, and is available for use of the state to secure the proper construction of the work under the terms of the last quoted clause of the contract, in the event that any part of the work is rejected. The state is further protected by a bond in' the penalty of $31,161, executed by the American Bonding Company of Baltimore, as surety, conditioned upon the faithful performance by the defendant of all of the terms, covenants, and conditions of the contract. It thus appears that the state has not been defrauded of any money.

It appears that the modus operandi of the highway department relieves the contractor of the necessity of making representations by presenting verified vouchers or claims for work done from time to time,

and there is no proof that this defendant made any representations at all respecting the edging constructed by him or the moneys that might become due him therefor, to induce the state to part with money in payment for this edging, shown to be defective and not in accordance with the specifications.

The courts have held that mere silence or suppression of the truth, a mere withholding of knowledge upon which another may act, is not sufficient to constitute false pretenses, and that to constitute the crime of larceny by false pretenses there must be active, affirmative, false representations. People v. Baker, 96 N. Y. 340; People v. Miller, 169 N..Y. 351, 62 N. E. 418, 88 Am. St. Rep. 546. There is no proof that the defendant made any statements or representations of any kind to induce the state's highway department to send him the draft and checks amounting to $55,425.15, which included the amount allowed in the estimate of $4,432.50 for the construction of the concrete edging, now proved to be defective and not in accordance with the specifications for second-class concrete.

The case would rest upon a different basis if it appeared that the money of the state had been obtained by the defendant through a conspiracy existing between himself and the officers or employés of the highway department to cheat and defraud the state of its property, or to obtain money or any other property by false pretenses. But there is no evidence connecting the defendant with such a conspiracy.

Whether or not the officials and employés of the state highway department have been guilty of neglect of duty or misconduct in the matter of the inspection of this work and the preparation of the estimates and the sending of the draft and checks pursuant to the estimates made by it, the defendant cannot be convicted of a crime except upon proof that he was connected with it, and it is not the province of the court or the jury to indulge in presumptions of guilt based upon suspicions, however strong, unsupported by proof in compliance with the rule of law which places upon the people the burden of proving the guilt of the defendant beyond a reasonable doubt.

It is not for the court, in determining this motion, to criticise the highway department for its peculiar methods in preparing estimates and making payments thereon without requiring any sworn statements from the contractor as to the amount and quality of the work done, or the presentation by the contractor of verified vouchers for the money claimed to be due him; nor is it for the court to square the conduct of this defendant by any code of morality or standard of integrity, because he may have failed to construct this edging according to the specifications of this contract, or because, despite his failure to construct the edging as specified, he accepted part payment therefor upon the estimates made by the highway department.

The sole question to be determined on this motion is whether the proof presented by the people is sufficient to show that the defendant committed the crime with which he is charged in the indictment. I am of the opinion that it has utterly failed. Notwithstanding the zealous efforts of the district attorney, and the production on the part of the people of all available proofs, the evidence is insufficient to war-

rant a conviction, and I therefore advise the acquittal of the defendant pursuant to section 410 of the Code of Criminal Procedure.

Ordered accordingly.