J. SAMUEL FOWLER, as Administrator with the Will Annexed, etc., of LAVANTIA C. ABBOTT, Deceased, Plaintiff, *v.* KATE E. FIRTH, Individually and as Administratrix with the Will Annexed, etc., of EMMA G. GARFIELD, Deceased, Defendant.

Supreme Court, Chautauqua County, August 4, 1937.

*J. Samuel Fowler*, in person, for the plaintiff.

*Phillips & Skinner* [*McKinley L. Phillips*, of counsel], for the defendant.

NOONAN, Official Referee. This action is brought to recover money alleged to have been wrongfully paid from the estate of Lavantia C. Abbott by Edward J. Green, who was executor of the estate, to the estate of Emma G. Garfield, of which he had also been executor. When the action came before Mr. Justice BERNARD B. ACKERMAN he referred it to me, an official referee of the Supreme Court, to hear and determine, and the trial was had at Jamestown, N. Y., on June 30, 1937, at which time a little testimony was taken, most of it of little importance, and the main issues submitted for decision upon a stipulated state of facts.

From the stipulated facts it appears that the last will and testament of said Lavantia C. Abbott was admitted to probate on June 19, 1936, and letters testamentary were issued to said Edward J. Green, the executor named in said will, and that he acted as such executor to and including September 28, 1936, when he resigned as such executor, and the plaintiff, J. Samuel Fowler, was appointed in his place, and that said Fowler qualified and has since been acting as such administrator with the will annexed.

It also appears that said Green, as executor of the Abbott estate, came into the possession of $5,938.36 in cash, which was placed by him on deposit in the Union Trust Company of Jamestown, N. Y., to the credit of or in the name of " Lavantia C. Abbott Estate, Edward J. Green, Executor."

It further appears that by a decree of the Surrogate's Court, made on October 16, 1936, the said Edward J. Green was charged with the sum of $5,638.36, money of the said Abbott estate received and withheld by him, and remaining unaccounted for and unpaid

for the purpose of said estate and unpaid to the administrator with the will annexed, and the account of said Green as executor was surcharged in that amount, which he was directed to pay forthwith to the administrator with the will annexed, together with $100 costs of the proceeding. By subsequent payments Green reduced this amount to $3,723.02, which includes the $100 costs. An execution for this amount was duly issued against the property of said Green and thereafter returned wholly unsatisfied.

Before any of the dates hereinbefore mentioned, the last will and testament of Emma G. Garfield was admitted to probate and said Edward J. Green was named in the will as executor thereof, and letters testamentary were issued to him. By an order of the Surrogate's Court, made on July 7, 1936, Green was removed as such executor of the Garfield estate and Kate E. Firth was duly appointed as administratrix with the will annexed and qualified and is now acting as such. Green never filed a satisfactory account in the Garfield estate, nor has there been any judicial settlement of any account, and no order was granted consolidating his voluntary report in the proceedings to compel an accounting, and Green was never discharged as executor of the Garfield estate until he complied with the terms of an order of the surrogate dated September 4, 1936, which provided: " That upon payment to Kate E. Firth, or Phillips & Skinner, her attorneys, the sum of $5,316.84 and delivering to her or to them certain bank stock, the executor shall be and hereby is fully and finally in all respects released and discharged."

In order to get the money to procure such discharge, among other things, said Green drew a check on the Union Trust Company dated September 4, 1936, payable to the order of " N. Y. Draft " for $4,500, and signed it " Lavantia Abbott Estate, by Edward J. Green, Extr.," and obtained therefor a New York draft for $4,500 drawn to the order of " Edward J. Green, Extr.," and so indorsed, and he delivered this New York draft, obtained from the funds of the Abbott estate, to the defendant or her attorneys and secured the general release both individually and as executor as provided for in the surrogate's order of September 4, 1936.

The sole question in this lawsuit is whether or not the plaintiff has a right to recover from the defendant the sum of $3,723.02 out of the fund that Green wrongfully took from the Abbott estate in order to secure his discharge as executor in the Garfield estate.

The law applicable to this question seems to be clearly stated in the headnote in the case of *Phelps* v. *McQuade* (158 App. Div. 528), which reads as follows:

" Where one obtains property by a common-law larceny and sells the same to a *bona fide* purchaser for value without notice of the

defect in title, the vendee does not obtain title as against the true owner; but such *bona fide* purchaser for value without notice will be protected even where his vendor obtained the goods by fraud if the fraudulent act is a felony by statute only and would not have been a felony at common law."

This case was affirmed in 220 N. Y. 232, and cited with approval in *Thompson* v. *Goldstone* (171 App. Div. 666) and *Amols* v. *Bernstein* (214 id. 469).

Common law larceny is defined in 36 Corpus Juris, 734, section 1, as follows: " [§ 1] A. Larceny in general. At common law. Larceny at common law may be defined to be the taking and carrying away from any place, at any time, of the personal property of another, without his consent, by a person not entitled to the possession thereof, feloniously, with intent to deprive the owner of his property permanently, and to convert it to the use of the taker or of some person other than the owner."

Other definitions are as follows: " [a] Other definitions — (1) ' The felonious taking and carrying away of the personal goods of another.' 4 Blackstone Comm., p. 229. (2) ' The wrongful or fraudulent taking and carrying away, by any person of the mere personal goods of another from any place with a felonious intent to convert them to his (the taker's) own use and make them his own property, without the consent of the owner.' "

These definitions are sustained by citations from all over the United States, and in this State by the case of *People* v. *Johnson* (87 Misc. 89).

Most of the provisions of our Penal Law in relation to larceny are simply a codification of the common law upon that subject. Under the definitions of larceny at common law quoted above, I am of the opinion that when Green took the money from the Abbott estate and gave it to the Garfield estate he committed larceny at common law, and, therefore, the plaintiff is entitled to recover $3,723.02, with interest thereon for eleven months amounting to $204.77, a total of $3,927.79. In arriving at my decision I am also impressed by the fact that the Garfield estate parted with nothing of value in order to receive the $4,500 that was paid to it by Mr. Green, and, consequently, there was no consideration on the part of the Garfield estate for the money that it received, but will gain $572.21 by the unlawful action of said Green, after paying this judgment.

As the Garfield estate and the defendant Kate E. Firth knew nothing of the fact that Mr. Green had taken the money from the Abbott estate at the time it was paid to the Garfield estate, I think the judgment should be without costs.

Judgment may be entered in favor of the plaintiff against the defendant as administratrix and individually, for the amount above stated, but without costs.   Submit findings and judgment in accordance with this decision.