(91 Misc. Rep. 107)

### PEOPLE v. MARTIN.

(Supreme Court, Special Term, Kings County. June 2, 1915.)

1. CRIMINAL LAW ⬤⟶1073—APPEAL—STAY OF EXECUTION—APPLICATION FOR CERTIFICATE OF REASONABLE DOUBT—TO WHOM ADDRESSED—STATUTE.
   Under Code Cr. Proc. § 529, as amended by Laws 1907, c. 479, § 2, providing that, upon appeal on conviction of felony or misdemeanor, an application for a certificate of reasonable doubt must be heard and determined either by the court in which conviction was had, if a court of record, or by a regularly appointed Special Term of the Supreme Court

---

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

held within the judicial district in which the conviction was had, such an application should be addressed to and determined by a regularly appointed Special Term, not by a justice of the Supreme Court, even though he be the justice sitting at such term.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2730; Dec. Dig. ☞1073.]

2. CRIMINAL LAW ☞1073—APPEAL—STAY OF EXECUTION—CERTIFICATE OF REASONABLE DOUBT—GROUNDS.

On application for a certificate of reasonable doubt to stay execution of sentence pending appeal, the court need not positively determine that the trial court erred; it being sufficient if, in the opinion of the court, there is reasonable doubt whether the judgment should stand, and it not being necessary that the applicant show prejudice from alleged error, as the court must determine that such error could not have prejudiced applicant before it can deny a certificate.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2730; Dec. Dig. ☞1073.]

3. FALSE PRETENSES ☞8—INTENT TO DEFRAUD—KNOWLEDGE.

Where real property is sold, and there is a false representation as to the nonexistence of an incumbrance, a mere showing that the vendor had knowledge of such incumbrance is not sufficient to establish his fraudulent intent for the purposes of a criminal prosecution.

[Ed. Note.—For other cases, see False Pretenses, Cent. Dig. § 13; Dec. Dig. ☞8.]

4. FALSE PRETENSES ☞8—INTENT—KNOWLEDGE.

Where a vendor of realty misrepresents that it is not incumbered, fraud subjecting him to criminal prosecution may be predicated on the fact that he had no title to the property which he represented he owned, or that it is subject to an incumbrance which he knowingly concealed in order to defraud.

[Ed. Note.—For other cases, see False Pretenses, Cent. Dig. § 13; Dec. Dig. ☞8.]

5. FALSE PRETENSES ☞14—LARCENY BY FRAUD—INTENT—KNOWLEDGE.

Where property is sold under representation that it is free of incumbrances, although covered by a mortgage unsatisfied of record, the vendor having a certificate of satisfaction upon which he relies to support his representation and to protect the purchaser, although the representation is in fact false, such vendor is not guilty of larceny of the purchase money by fraud.

[Ed. Note.—For other cases, see False Pretenses, Cent. Dig. § 18; Dec. Dig. ☞14.]

6. FALSE PRETENSES ☞14—LARCENY BY FRAUD—INTENT—KNOWLEDGE.

Where a vendor of realty knowingly misrepresented it was unincumbered, but also knew that the purchaser could suffer no loss by reason of such incumbrance, as a title insurance company had guaranteed her against loss at his instance, such vendor was not guilty of larceny of the purchase money by fraud.

[Ed. Note.—For other cases, see False Pretenses, Cent. Dig. § 18; Dec. Dig. ☞14.]

7. MORTGAGES ☞287—MORTGAGED PROPERTY SOLD IN PART—PRIMARY FUND LIABLE FOR DEBT.

Where there was a blanket mortgage on a number of lots of realty, and some of such lots were sold, the unsold mortgaged property was the primary fund against which the mortgagee could enforce and collect the incumbrance.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 782, 783; Dec. Dig. ☞287.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

8. CRIMINAL LAW ⊜1073—APPEAL—STAY OF EXECUTION—REASONABLE DOUBT OF GUILT—SUFFICIENCY OF EVIDENCE.

On application for a certificate of reasonable doubt after defendant's conviction of grand larceny, evidence as to his intent to defraud by representing that realty sold by him was unincumbered *held* insufficient to support conviction beyond a reasonable doubt.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2730; Dec. Dig. ⊜1073.]

9. CRIMINAL LAW ⊜400—EVIDENCE—ADMISSIONS—TESTIMONY OF STENOGRA-PHER.

In a prosecution for larceny, where the defendant consulted an attorney, whose stenographer, by means of a dictagraph, without seeing the defendant, not being in the room with him, and not knowing his voice, took down a portion of his conversation with the attorney, transcribed selected and incomplete notes thereof, and at the trial was not called to testify to statements made in her presence by the defendant, but her transcript of the incomplete notes taken from the dictagraph was received against him as primary evidence of his admissions, not to contradict him on cross-examination, or to aid the stenographer in recollecting a conversation to which she was testifying directly, the admission of such transcript was erroneous, irrespective of any privilege of the defendant arising from his relation as claimed by the attorney.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 879–886, 1208–1210; Dec. Dig. ⊜400.]

Frank P. Martin was convicted of grand larceny, and in connection with his appeal applies for a certificate of reasonable doubt to stay execution of sentence. Application granted, and defendant admitted to bail.

Albert Tameling and Edward J. Byrne, both of Brooklyn, for the motion.

James C. Cropsey, Dist. Atty., and Ralph E. Hemstreet, Asst. Dist. Atty., both of Brooklyn, opposed.

BENEDICT, J. Upon the 20th day of April, 1915, the defendant was convicted in the County Court of Kings County of the crime of grand larceny in the first degree, and he was thereafter sentenced to be confined for one year in the New York County Penitentiary. He now, in connection with his appeal from said judgment, applies to me at the Special Term, Part I, for a certificate by a justice of this court that there is in his opinion reasonable doubt whether the judgment of conviction should stand, and he has obtained an order to show cause to that end which contains an intermediate stay of execution.

[1] The form of the application, both as to the affidavit and order to show cause, is inartificial, because it is assumed to be an application to a justice of the Supreme Court and not to the court itself. As I had occasion to point out in People v. Tirnauer, 77 Misc. Rep. 387, 136 N. Y. Supp. 833, this is not, since the amendment of 1907 (chapter 479, Laws of 1907), the proper form of motion. The motion should be addressed to and determined by a regularly appointed Special Term, and not by a justice of the Supreme Court, even though he be the justice sitting at that term. As, however, this objection to form of application was not taken by the district attorney, it may be

regarded as waived by him, and the application will be considered upon its merits and be determined by the court, and not by a justice thereof. I call attention to it now only for the purpose of emphasis, because the statutory amendment is frequently overlooked by the bar.

[2] The rule governing the Special Term in the determination of an application of this kind is that the court hearing the application need not arrive at a positive conclusion that the trial court erred; it is enough if, in the opinion of the court, there is reasonable doubt whether the judgment should stand, and in this connection it is not necessary for the applicant to show that the alleged error did in fact prejudice the defendant, but the court must determine that the error complained of could not in any way have affected or prejudiced the defendant before it is warranted in denying a certificate. People v. Tirnauer, supra, and cases there cited; People v. Damron, 80 Misc. Rep. 114, 140 N. Y. Supp. 787. The granting of certificates of reasonable doubt is not infrequently the subject of adverse criticism by unthinking persons, who overlook the fact that whereas, in civil cases affecting only rights to property, a defeated litigant can obtain a stay of execution pending a review of the case upon appeal by furnishing security, a defendant, deprived of his personal liberty in a criminal case, can only obtain a stay of execution pending appeal, except where the judgment is of death, if he be able to secure a certificate of reasonable doubt. If he cannot get that, he may, even if successful upon his appeal, have already served all of the sentence before his appeal can be decided; and so, as Justice Markus intimated in People v. Meadows, 62 Misc. Rep. 573, 115 N. Y. Supp. 656, judicial action should not be controlled by manifestations of public impatience with the delays that at times mark the administration of criminal law. "If the present mode of procedure in criminal trials, with the appeal or appeals allowed, results in undesirable delay in the enforcement of the criminal law, relief should be had by legislative action in the way, either of abolishing appeals altogether, * * * or still further expediting their disposition toward final adjudication." In the present case the court should grant the certificate. There are several grounds of error assigned, but I shall consider only two of them.

[3-8] The defendant was found guilty of the crime of grand larceny in the first degree upon the theory that he had, prior to the delivery to the complaining witness, Mrs. Ferrando, of the deed and the policy of title insurance showing the title to be free from incumbrances and the payment and delivery of the purchase money by her, made statements to Mrs. Ferrando, either orally or in writing, which induced her to part with her money, and that it was then the defendant's intention to cheat and defraud her. The defendant was vice president of the Bellmore Villa Site Development Company, which owned a tract of land at Bellmore, Long Island, which was subdivided into lots, of which about 187 remained unsold, and upon which there appear to have been two blanket mortgages, having at that time a balance of about $9,500 remaining unpaid. Four of these lots were sold and conveyed to Mrs. Ferrando in March, 1910, for the sum of $700, ostensibly as being free of incumbrance. In reality there was then

due upon these lots their ratable share of the blanket mortgage, and this amounted to about $57 a lot. The policy of title insurance delivered by the defendant to the purchaser and issued by the New York Title Insurance Company at the time of the conveyance guaranteed to her that the lots were free of incumbrance. Mrs. Ferrando, much of whose testimony was quite confused and unsatisfactory, testified that she knew that the title company was to release the property when the trial was over, and that she still owned the lots, and it was testified to, and not contradicted, that they had a present value of $1,000, or more than the purchase price.

The defendant denied any criminal intent, and it seems doubtful under the circumstances attending the sale whether it was in fact made with the criminal intent on the defendant's part to cheat the purchaser. Admitting, for the sake of the argument, that there was a false representation or pretense, was it made by this defendant with intent to defraud? In the case of a sale of real property, where the representation is as to the existence of an incumbrance, the question of fraudulent intent in a criminal prosecution depends upon something more than the knowledge of the incumbrance by the vendor. See People v. Baker, 96 N. Y. 340, 348. It assumes that the incumbrance will not be removed from the property without expense to the vendee. In such a case the element of fraud may be predicated upon the fact that the vendor had no title to the property which he represented he owned, or that it is subject to an incumbrance the existence of which he knowingly withheld from the purchaser to cheat her out of her money. Is the present case of that nature? Suppose a case where property sold and represented as free of incumbrance has in fact a mortgage unsatisfied of record, but the vendor has in his possession a certificate of satisfaction upon which he relies to support his representation and to protect the purchaser from loss. Now, in such a case the representation is in fact false, but the vendor would not be guilty of grand larceny in obtaining the purchase money for the property.

So here the defendant knew of the outstanding lien, but he also knew that to all intents and purposes the property was free and that the purchaser could suffer no loss by reason of the incumbrance—the title insurance company having guaranteed her against that at the instance of the defendant. In addition to knowledge of that fact the defendant had a right to rely upon the equitable rule which governs such cases, but which seems to have been lost sight of by all concerned in this trial, including court and counsel, that the primary fund out of which the mortgagee could enforce and collect the mortgage incumbrance was the unsold mortgaged property, because such property as had been sold would not be applied to the mortgage debt until the unsold property was first exhausted. There appears to have been a considerable equity in the unsold lots over and above the mortgage debt, and knowledge of this fact by the defendant would go far to dissipate the charge of criminal intent on this defendant's part. The bearing which these matters had upon the question of criminal intent was not explained to the jury at all. Had it been, I am inclined to

think the result would have been different. It is, in my opinion, a matter of grave doubt whether there did exist is this case sufficient evidence to support the finding beyond a reasonable doubt that the false pretenses were made with intent to cheat and defraud.

[9] I might rest upon the foregoing statement, were it not that I deem it necessary to consider one other assignment of error at the trial. This relates to the admission in evidence over defendant's objection of the transcribed notes of a conversation heard and stenographically taken by a clerk in the office of a certain attorney. The facts, as set out in the brief submitted by the district attorney, were as follows: Frederick Scharfenburg, the brother-in-law of the defendant, was president of the development company of which the defendant was vice president, and of' which they were the sole proprietors. Scharfenburg executed the deed to Mrs. Ferrando, who was an acquaintance of his. After the arraignment of the defendant, and while he was out on bail pending action by the grand jury, Scharfenburg and the defendant applied to Scharfenburg's mother for aid. They were referred to the mother's attorney, and Martin went by appointment to the office of the attorney. A dictagraph had a few days previously been installed in the office of the attorney, and at a preconcerted signal given by the attorney to his stenographer in an adjacent room, she took down stenographically a portion of the conversation as she heard it over the dictagraph between the attorney and the defendant, and transcribed her selected and incomplete notes of such report. The stenographer was not in the room where the defendant was, she had never seen him before that time, and she did not know or recognize his voice. She was not called as a witness to testify to statements made in her presence by the defendant, but her transcription of the incomplete notes which she had taken from the dictagraph was received in evidence against the defendant as primary or independent evidence of his admissions, and not to contradict the defendant upon his cross-examination, nor as an aid to the recollection of a witness to a conversation which she had heard. It is claimed that this was error, and I think it was, whether the interview between the attorney and the defendant, who was seeking his aid, be or be not regarded as privileged, as is the claim of the defendant.

Application granted, and the defendant is admitted to bail in the sum of $2,000.