· PEOPLE v. TODORO.

(Supreme Court, Special Term, Onondaga County. July, 1916.)

1. CRIMINAL LAW ⬤⟿369(8)—RAPE—EVIDENCE—ADMISSIBILITY—OTHER ACTS.
    In a prosecution for rape, evidence of accused's previous improper relations with the complaining witness is admissible for the purpose of corroboration.
    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 822, 823; Dec. Dig. ⬤⟿369(8).]

2. CRIMINAL LAW ⬤⟿444—DOCUMENTARY EVIDENCE—AUTHENTICATION—RECORD OF A FOREIGN COUNTRY.
    Under Penal Law (Consol. Laws, c. 40) § 817, making admissible a duly authenticated transcript of a birth record in any bureau of vital statistics or board of health, an Italian birth certificate *held* inadmissible for lack of authentication and proof that the issuing office corresponded to the boards mentioned in the statute.
    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1028; Dec. Dig. ⬤⟿444.]

3. CRIMINAL LAW ⬤⟿444—IDENTITY OF COMPLAINING WITNESS.
    There is no sufficient identification of a complaining witness with the person named in an Italian birth certificate, where it merely appears that both were born in Italy, that their names are similar, and that the names of the parents are somewhat similar.
    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1028; Dec. Dig. ⬤⟿444.]

4. RAPE ⬤⟿52(4)—SUFFICIENCY OF EVIDENCE—AGE—INSPECTION.
    The jury cannot sufficiently determine,, from an inspection of a complaining witness, whether she is under or over 18 years of age.
    [Ed. Note.—For other cases, see Rape, Cent. Dig. § 76; Dec. Dig. ⬤⟿ 52(4).]

5. RAPE ⬤⟿64—SENTENCE—EXCESSIVENESS.
    A maximum sentence of 5 to 10 years for second degree rape is excessive, where the complaining witness is admittedly of an immoral character.
    [Ed. Note.—For other cases, see Rape, Cent. Dig. § 105; Dec. Dig. ⬤⟿64.]

6. CRIMINAL LAW ⬤⟿1073—APPEAL—CERTIFICATE OF REASONABLE DOUBT.
    The test for granting a certificate of reasonable doubt is whether the judge is satisfied that the questions of law are sufficient for the appel-

late court's consideration, and not necessarily that the conviction will be reversed.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2730; Dec. Dig. ☞1073.]

Nick Todoro was convicted of rape in the second degree, and moves for a certificate of reasonable doubt. Certificate granted.

McNamara & Harrington, of Rome, for the motion.
Arthur S. Evans, Asst. Dist. Atty., of Rome, opposed.

ROSS, J. The defendant was convicted in the County Court of Oneida County of the crime of rape in the second degree, and was sentenced to state prison for not less than 5 nor more than 10 years, being the maximum punishment authorized by statute.

Chapter 325 of the Laws of 1892 (Penal Law, § 2010) made the act of sexual intercourse by a person with a female not his wife under the age of 18 years, under circumstances not amounting to rape in the first degree, rape in the second degree. Before that time, such illicit sexual intercourse was not a crime, and was only actionable upon the basis of a fiction; i. e., loss of services to the master. The act was for the protection of womanhood and childhood from the libertine, and while a strict enforcement of its provisions and punishment therefor should receive and does receive the sanction of all well-thinking men and women, there is no provision of the Penal Code in which greater care should be taken by the trial court in protecting the rights of the accused, especially with reference to the proof of the age of the female who is alleged to have been debauched. People v. Marks, 146 App. Div. 11, 130 N. Y. Supp. 524.

This application is made pursuant to the terms of section 527 of the Code of Criminal Procedure, which contains the provision that when, in the opinion of the Supreme Court, there is reasonable doubt whether the judgment should stand, a certificate to that effect may be given which operates as a stay pending the determination of the appeal from the judgment of conviction.

The charge in the indictment is that, at the city of Rome, Oneida county, on January 17, 1916, the defendant had sexual intercourse with one Mary Carmella Passerella, at times called Laura Passerella, a female not his wife, who at that time, as was claimed by the people, was of the age of substantially 15 years and 6 months. The defense is a denial of the act of sexual intercourse, and that the female in question was at the date alleged in the indictment 3 years older than claimed by the people, or over the age of 18 years.

As bearing upon the credibility of the complaining witness, and also upon the question of whether the sentence imposed was excessive, a brief statement of the conceded facts in regard to the female, Mary Carmella, is instructive. The immoral conditions, disclosed by the record would seem to tax the assimilating powers of the much advertised melting-pot to the utmost, and with reference to the particular parties to this record it would seem that the furnace would be a more suitable instrumentality.

The girl was born in Italy, and has been in this country about 7

years. Her mother came to this country with a man who was not her husband, leaving the father, who is still alive, in Italy; and her mother, last September, was shot by her sister. The circumstances of the shooting, whether accidental or criminal, do not appear in this record, excepting that it appears that the sister was locked up for shooting her mother. The girl was, on May 17, 1915, married to one Jim Fera, with whom she lived 23 days. Before she left her husband, she asked one of his Italian friends to run away with her, and previously had intercourse with him. She could not remember how many times, but admits two or three times. She also had intercourse with one Rocco Rocco the night before she was married. When she commenced to go to school in Rome, some 6 years ago, she gave her age as 12 years. Later she went to work in the Williams Knitting Mill, at which time she gave her age as 16, and when she signed the application for her marriage license she gave her age as 18. This was May 17, 1915. It is claimed by the people that all these dates which were given were false, that she changed her age at the time when she went to work at the instance of her mother, for the reason that, if she gave her true age of 14, she would not be allowed to work; that she gave the age of 18 when she was married, because her mother would not give her consent. No explanation is made for her false statement of her age as 12 when she commenced to go to school in Rome.

The act of sexual intercourse between the defendant and the girl, not only presented a question of fact for the jury, but was proven with a conclusiveness unusual in these cases, notwithstanding the denial of the defendant and the resort which he had to placing on the stand the witness Munzia Mezzetesta, a married woman in his employ, whose husband was apparently in court, and who testified as earnestly as she could to the fact that she was at the Adams House in Rome with the defendant, and also in a hotel in the city of Utica, having on a black plush coat, which had been described by one of the witnesses for the people as the style of garment worn by the girl, Mary Carmella, upon one of the occasions in question.

[1] Evidence was allowed of sexual intercourse between the defendant and the complaining witness in the months of November and December, prior to the date alleged in the indictment in the city of Rome, and in Utica, and also in Auburn. This was received by the court for the purpose of corroboration only, and the learned judge, in his charge, limited the weight to be given to this evidence, and cautioned the jury that no conviction could be had for any other crime than the one charged. I think that the admission of this evidence does not present any error. People v. Thompson, 212 N. Y. 249, 106 N. E. 78, L. R. A. 1915D, 236, Ann. Cas. 1915D, 162.

[2] The people offered in evidence what was claimed to be a copy from the register of births of the municipality of Placanica, Italy, and admission of this evidence, the importance of which is apparent, presents a serious question. The people seek to justify the admission of this evidence under the provisions of section 817 of the Penal Law. This section provides for the admission of "a transcript of the record

of birth recorded in any bureau of vital statistics or board of health, duly authenticated by its secretarty or under its seal." The following is a copy of the document in question:

"Province of Reggio Calabria—District of Gerace. Municipality of Placanica. Office of the Civil State. Extract from the Registrar of Births of the Year 1900.

"The year 1900 the 23d day of July, at 10 a. m., in Municipality house. Before me, Vincenzo De Angelis, secretary of the municipality, delegated with act of September 1st of last year, duly approved officer of the civil state of the municipality of Placanica, has appeared Passarelli Nicola, of the age of 31, tailor, domiciled in Placanica, who has declared to me that at 3 p. m. of the 22d day of the current month, in the house situated in Via Princip I Napoli, from Panaia Filomena Uglinana, his wife, spinner, with him living, was born a child of female sex, which he presents to me and to whom he gives the names of Maria—Carmela—Aurelia.

"At the foregoing and at this act were present, as witnesses, Fante Angelo, of the age of 36, shoemaker, and Panaia Nicola, of the age of 42, property owner, both residents of this municipality.

"Having read the present act to all intervened is with me subscribed by the declarer only as the witnesses are illiterate. [Signed] Passarelli Nicola, V. De Angelis.

"For copy in conformity with the original released at the request of the illustrious Sir Anthony of the King of Gerace.

"Placanica the 25th day of March, 1916.

"The officer of the Civil State,<br>
"N. Musco<br>
"Municipality of Placanica,<br>
"Reggio Calabria.

"[Seal for the Legalization of the Signature of the Sir Officer of the Civil State of Placanica]

"Gerace the 28th day of March, 1916.

"The President.

"The Chancellor of Civil and Penal Tribunal of Gerace."

It seems to me that the document was inadmissible for the following reasons:

First. It does not appear intrinsically from the instrument itself or by extrinsic proof that there was any law in Italy authorizing a record of births or creating a bureau of vital statistics.

Second. It does not appear that the instrument in question or the original was a record in any bureau of vital statistics or board of health, or any office corresponding thereto, or was kept in conformity to the laws of the land where made. It appears in the translation, "Extract from the Registrar of Births for the Year 1900"; but this is simply a characterization put upon the copy.

Third. There is no authentication of the official character of the person before whom some one appeared and gave information relative to the birth of a child.

Fourth. The official character of the person signing the instrument offered in evidence is equally devoid of proof, and the official character of the instrument itself is not authenticated.

To reiterate, the certificate must be one authorized by law, must be properly authenticated, both as to its source and as to the persons who executed the instruments, and such authentication must be of a character to be recognized by the courts of this state, and it must be shown with some degree of certainty that it relates to the same person whose age is sought to be proven.

[3] With reference to the requirement last mentioned, when the document was offered in evidence, the only identification that the complaining witness was the person whose name appears in the instrument in question is an apparent similarity in the name of the girl and the names of her parents with the names in the instrument, and the statement that she was born in Italy. I think that it may be assumed that the names of the girl and of her father and mother are not uncommon names in Italy. Suppose that this girl, instead of being born in Italy, had been born in England, and that the only identification was "Mary Jane Smith," which corresponded with the name in the proposed document offered, would any court for a minute claim that she had been sufficiently identified as the person named in the certificate. It is true that subsequently the defendant's witness, Catherine Fero, a maternal aunt, to some extent identified the girl Mary Carmella with the document offered in evidence, but her testimony in this regard is not convincing.

[4] As to the claim of the learned counsel for the people that the jury might determine the girl's age by personal inspection in court, I refer to the opinion of Mr. Justice Laughlin in People v. Marks, 146 App. Div. on page 14, 130 N. Y. Supp. 527:

"We are of opinion, however, that the appearance of the complaining witness could not materially aid the jury in determining whether her true age on March 6th was 18 years and 1 second, which would have required an acquittal, or 17 years and 8 months, which required conviction."

[5] It is claimed by the defendant that the sentence in this case was excessive, and that a new trial may be granted for that reason. Assuming that such power exists (People v. Miles, 158 N. Y. Supp. 819), I think the sentence was excessive. I state this, having in mind the reluctance with which an appellate court will review a matter resting so clearly in the discretion of a trial judge as the imposition of a sentence. But, it would seem to me that the maximum sentence possible to be imposed should be reserved for the case of the libertine who debauches a concededly innocent child, where you have both the youth and the virginity of the female debauched, and not be exercised in the case of a girl disclosing the low state of morals admitted by the complaining witness in this case. I also realize that a comparison of sentences is usually not enlightening—that the judge has to deal with each case as it arises; but at the same time I cannot overlook the fact that, if this defendant had assaulted the girl with an intent to kill, however severely he had injured her, the sentence could not have been more severe.

[6] The cases agree that:

"The test of the propriety of granting a certificate of reasonable doubt in a criminal case is not that the judge to whom the application is made should be satisfied that the judgment of conviction will be reversed, but that questions of law are raised sufficient for the consideration of the appellate court." People v. Hummel, 49 Misc. Rep. 136, 98 N. Y. Supp. 713; People v. Meadows, 62 Misc. Rep. 573, 115 N. Y. Supp. 656; People v. Martin, 91 Misc. Rep. 108, 154 N. Y. Supp. 324.

The certificate is granted, but upon the condition that the defendant be admitted to bail in the sum of $2,000.