# COURT OF APPEALS.

## February 12, 1918.

## THE PEOPLE ex rel. DAVID WORONOFF v. PETER A. MALLON, Warden, etc.

### (222 N. Y. 456.)

EVIDENCE—PRESUMPTION OF FACT—CONSTITUTIONAL LAW—THE STATUTE (PENAL LAW, § 442) CREATING A PRESUMPTION OF FACT AGAINST A DEFENDANT CHARGED WITH THE CRIME OF OBTAINING PROPERTY BY MEANS OF A FALSE STATEMENT OF HIS ABILITY TO PAY, DOES NOT VIOLATE ANY CONSTITUTIONAL PROVISION.

1. The power of the Legislature to change rules of evidence as they existed at the common law and to limit, change and vary existing rules for the limitation of actions has been uniformly held not to be affected or restricted by the constitutional limitation prohibiting the taking of life, liberty or property without due process of law.

2. Numerous statutes have been enacted providing that proof of one fact shall be *prima facie* evidence of the main fact in issue; and where the inference is not purely arbitrary and there is a rational relation between the two facts, and the accused is not deprived of a proper opportunity to submit all the facts bearing upon the issue, it has been held that such statutes do not violate the requirements of due process of law.

3. The relators were held upon a warrant issued out of the Magistrate's Court in the city of New York charging them with the crime of grand larceny by false pretenses under sections 442 and 947 of the Penal Law. Pending the hearing before the magistrate, a writ of habeas corpus was sued out to obtain the prisoner's discharge upon the ground that no crime was set forth in the information. Section 442 of the Penal Law provides that whenever property shall be purchased by aid of a statement relating to the purchaser's means or ability to pay, made in writing and signed by the party to be charged, and in said statement the party to be charged shall state that he conducts a specified kind of business and keeps books of account of said business, if he fails to pay for the property he may be required to produce his books for examination by the person from whom he obtained the credit, and failure to so produce " shall be presumptive evidence that each and every pretense relating to

the purchaser's means or ability to pay in said statement contained were false at the time of making said statement and were known to the purchaser to be false." *Held*, that this statute does not violate any constitutional provision. (Bailey v. Alabama, 219 U. S. 219, distinguished; People v. Gibson, 218 N. Y. 70, distinguished and limited.)

(People ex rel. Woronoff v. Mallon, 166 App. Div. 840, affirmed.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered December 24, 1914, which affirmed an order of Special Term dismissing a writ of habeas corpus and remanding the relators to custody.

The facts, so far as material, are stated in the opinion.

*Edward Hymes,* for appellants.

The statute creating the presumption that the statements made by the purchaser are false is unreasonable. (People v. Cannon, 139 N. Y. 32; Matter of Morgan, 114 App. Div. 45; Matter of Harris, 26 Am. Bank. Rep. 302; Boyd v. United States, 116 U. S. 616; People v. Smith, 172 N. Y. 210; People v. Bissert, 71 App. Div. 118, 172 N. Y. 643; People v. Conrow, 200 N. Y. 356; People v. Marendi, 213 N. Y. 600; People v. Koerner, 154 N. Y. 355.) The statute in effect compels a party to testify against himself, and is, therefore, unconstitutional. (Counselman v. Hitchcock, 142 U. S. 547; Boyd v. United States, 116 U. S. 616; People ex rel. Ferguson v. Reardon, 197 N. Y. 236; People v. Rosenheimer, 209 N. Y. 115; People v. Gibson, 218 N. Y. 70; People v. Minkowitz, 220 N. Y. 399.)

*Edward Swann, District Attorney (Robert C. Taylor,* of counsel), for respondent.

Section 442 of the Penal Law enacts a rule which is reasonable. (Justice v. Lang, 52 N. Y. 323; People v. Majone, 42

Hun, 334, 91 N. Y. 211; People v. Conway, 97 N. Y. 62; Adams v. Davidson, 10 N. Y. 309; Gordon v. People, 33 N. Y. 501; People v. Hovey, 92 N. Y. 554; Nowack v. M. S. Ry. Co., 166 N. Y. 433; Lacs v. Everard's Breweries, 170 N. Y. 444; Hoag v. Wright, 174 N. Y. 36, 46; People v. Shillitano, 218 N. Y. 161, 179.)    Section 442 of the Penal Law is not violative of the due process provision of the Constitution.    (People v. Cannon, 139 N. Y. 32; M., etc., R. R. Co. v. Turnipseed, 219 U. S. 35; Fong Yue Ting v. United States, 149 U. S. 698; Lindsley v. Natural Carb. Gas Co., 220 U. S. 61; Luria v. U. S., 231 U. S. 9, 26; Meeker v. L. V. R. R., 236 U. S. 412; Bowersock v. Smith, 243 U. S. 29; Hawkins v. Bleakly, 243 U. S. 210; Reitler v. Harris, 223 U. S. 437, 441; U. S. v. Jin Fuey Moy, 241 U. S. 394.)    Section 442 of the Penal Law is not violative of the constitutional provision that no person shall be compelled in any criminal case to be a witness against himself.    Self-incrimination does not obtain where there has been no compulsion, but voluntary disclosure instead.    (People v. Holt, 218 U. S. 245; People v. Gardner, 144 N. Y. 119; People v. Cassidy, 213 N. Y. 388; People v. Trybus, 219 N. Y. 18; People v. Tice, 131 N. Y. 651; People v. Pindar, 210 N. Y. 191; Vose v. Cockroft, 44 N. Y. 415; Pierson v. People, 79 N. Y. 424; Sentenis v. Ladew, 140 N. Y. 463; Mayor, etc., v. Manh. Ry., 143 N. Y. 1; Dodge v. Cornelius, 168 N. Y. 242; Dubuc v. Lazell, D. & Co., 182 N. Y. 482; Musco v. United Sur. Co., 196 N. Y. 459.)

CRANE, J.:

The relators were held upon a warrant issued out of the Magistrates' Court in the city of New York charging them with the crime of grand larceny by false pretenses under sections 442 and 947 of the Penal Law. Pending the hearing before the magistrate, a writ of habeas corpus was sued out to obtain the

prisoners' discharge upon the ground that no crime was set forth in the information.

This proceeding raises the constitutionality of section 442 of the Penal Law and has been instituted for the purpose of having the courts pass upon the validity of this provision. If section 442 be a proper enactment then the information in this case sufficiently states a crime. If not, the prisoners must be discharged.

Section 947 of the Penal Law, part of article 86, designated "Frauds and Cheats," reads as follows:

"Sec. 947. Verbal false pretense not criminal. A purchase of property by means of a false pretense is not criminal, where the false pretense relates to the purchaser's means or ability to pay, unless the pretense is made in writing and signed by the party to be charged."

Section 442, part of article 40, designated "Business and Trade," provides, so far as material: "Whenever property shall be purchased by aid of a statement relating to the purchaser's means or ability to pay, made in writing and signed by the party to be charged, and in said statement the party to be charged shall state that he conducts a specified kind of business and keeps books of account of said business, then, if at the expiration of any term of credit obtained by him in so purchasing said property he shall fail to pay for the same, he shall at all times during the period of ninety days subsequent to such failure to pay, upon the request of the persons from whom such property was purchased * * * produce within ten days after such request is made his said books of account * * * and permit the persons from whom said property was purchased, * * * to fully examine such books of account * * * and to make copies of any part thereof. Upon such request being made, failure to so produce within ten days said books of account * * * described in said statement shall be presumptive evidence that each and every pretense relating

to the purchaser's means or ability to pay in said statement contained were false at the time of making said statement and were known to the purchaser to be false."

The information, signed by F. Heinz Bleistein, a representative in America of the International Hide and Skin Company, states that he was requested, in November of 1911, by the relators, Woronoff and Edson, to sell them a bill of goods consisting of three bales of furs known as Chinese Thibet skins. He questioned the credit of the relators and asked for an individual financial statement, which they refused to give, stating that they never gave individual financial statements but gave statements to their banks and the commercial agencies of Bradstreet & Company and R. G. Dun & Company. They told Bleistein to consult the financial statements given to these agencies, representing them to contain a true and accurate condition of their finances. The seller consulted the statements made to the mercantile agencies, and, finding that Woronoff and Edson were perfectly good according to the figures therein given, sold them a bill of goods valued at $1,266.35. The following month the purchasers went into bankruptcy and after request in writing pursuant to the sections of the Penal Law above set forth failed and refused to exhibit their books for inspection. Annexed to the information were copies of the financial statements referred to and received from Bradstreet & Company and R. G. Dun & Company.

Woronoff and Edson, in these written statement, specified their business as manufacturers of furs at 80 University place, Manhattan, New York City, and itemized their assets, showing a balance over liabilities of $22,827.63 on January 21, 1911. These words appear above their signatures: "Above items and amounts are included in our books and are true to our personal knowledge. We keep a cash book, a ledger, a sales book, and other books."

All the facts, therefore, necessary to make out an offense and

sufficient to give the magistrate jurisdiction to hold the relators for trial were stated in the information, unless section 442 be unconstitutional as claimed. The fault found with the section is that it creates a presumption, on failure to produce the books, that the financial statement was false, and known to be false.

The creation of presumptions such as this is not new to legislation. In People v. Cannon (139 N. Y. 32, 43, 10 N. Y. Crim. 541) we find this statement: " It cannot be disputed that the courts of this and other States are committed to the general principle that even in criminal prosecutions the Legislature may with some limitations enact that when certain facts have been proved they shall be presumed *prima facie* evidence of the existence of the main fact in question. (See cases cited in 103 N. Y. 143, *supra*.) The limitations are that the fact upon which the presumption is to rest must have some fair relation to, or natural connection with the main fact." This is the law applied in many cases. (Mobile, J. & K. C. R. R. Co. v. Turnipseed, 219 U. S. 35; Fong Yue Ting v. U. S., 149 U. S. 698; Hawkins v. Bleakly, 243 U. S. 210, 213, 214; Reitler v. Harris, 223 U. S. 437; Cooley Const. Lim. [7th ed.] 409, 524, 526.)

The power of the Legislature to change rules of evidence as they existed at the common law and to limit, change and vary existing rules for the limitations of actions has been the subject of frequent consideration in the courts and has been uniformly held not to be affected or restricted by the constitutional limitation prohibiting the taking of life, liberty or property without due process of law. (People v. Johnson, 185 N. Y. 219, 20 N. Y. Crim. 109.)

The presumption declared unconstitutional in Bailey v. Alabama (219 U. S. 219) violated the Thirteenth Amendment to the United States Constitution, not the Fourteenth. The statute provided that any person who with intent to defraud his employer entered into a contract in writing for the performance

of any service, and thereby obtained money, and with like intent and without refunding the money, refused to perform the service, was to be punished by a fine. The refusal or failure of any person who entered into such a contract to perform such service or refund such money was to be *prima facie* evidence of the intent to defraud his employer. "We cannot escape the conclusion," said the court, "that, although the statute in terms is to punish fraud, still its natural and inevitable effect is to expose to conviction for crime those who simply fail or refuse to perform contracts for personal service in liquidation of a debt, and judging its purpose by its effect that it seeks in this way to provide the means of compulsion through which performance of such service may be secured. The question is whether such a statute is constitutional.    *    *    *

"In the present case it is urged that the statute as amended, through the operation of the presumption for which it provides, violates the Thirteenth Amendment of the Constitution of the United States and the act of Congress passed for its enforcement." (P. 238.)

Agreeing with this contention, the court considered it unnecessary to pass upon the questions arising under the Fourteenth Amendment, recognizing, however, in the following paragraph, the rule which we here re-affirm.

"This court has frequently recognized the general power of every Legislature to prescribe the evidence which shall be received, and the effect of that evidence in the courts of its own government. (Fong Yue Ting v. United States, 149 U. S. 698, 749.) In the exercise of this power numerous statutes have been enacted providing that proof of one fact shall be *prima facie* evidence of the main fact in issue; and where the inference is not purely arbitrary and there is a rational relation between the two facts, and the accused is not deprived of a proper opportunity to submit all the facts bearing upon the

issue, it has been held that such statutes do not violate the requirements of due process of law."

This power of the Legislature is not denied by the appellants, but it is insisted that the presumption raised by section 442 is unreasonable and has no fair relation to or natural connection with the main fact. With this we do not agree.

The relators kept books — a cash book, a ledger, sales books and other books. In a statement to a mercantile agency given for the purpose of establishing their credit they said in writing that these books showed the cash in the bank, the accounts receivable, the merchandise, machinery and fixtures in their establishments, and also their liabilities, and that the assets over liabilities on January 21, 1911, amounted to $22,827.63. In November of 1911, desiring to purchase a bill of goods, they referred the seller to this statement made to the mercantile agency and said that it was true of their present financial condition. A month later they went into voluntary bankruptcy and failed to pay any part of the bill purchased in November. Suppose the seller, with the statement in his possession, called upon the defendants and asked to see their books and they refused to permit any examination to be made, or suppose that upon a trial involving the truth of the financial statement given to the agency, these purchasers failed to produce or account for their books, would there not be a natural inference to be drawn from such refusal and failure that the books were not in accordance with the statement and that the latter was false? This provision of the Penal Law is but a statement of a natural inference to be drawn from such facts. The presumption is not disconnected from the main facts; it is not arbitrary or unreasonable. It is the natural result to which the undisputed facts reasonably lead.

The criminal law of our State attempts to meet the new devices and methods of committing crime and to stamp out and punish fraud and theft in its many disguises. It had become

a frequent occurrence for persons falsely pretending to be traders or merchants to obtain large bills of goods and merchandise by misrepresenting their finances, and then fail, or go into bankruptcy. That the purchaser knew his financial statements to be false and intended to cheat was often difficult of proof. Knowledge and intent had to be gathered from the circumstances. The criminal seldom declared his intent, but rather posed as an honest though unfortunate trader. The upright man might be unable to meet his bills, but he would ever be ready to show that his dealings were straightforward and that his books corresponded with his financial statements. With these simple facts in mind, this State enacted laws to meet the conditions. By chapter 556 of the Laws of 1905, section 442 was enacted. By chapter 340 of the Laws of 1912 section 1293b was added to the Penal Law, making it a misdemeanor to make a false statement through any agency with intent to have it relied upon.

Presumptions are constantly arising from the proof of facts which move juries or courts to a determination. Because these presumptions are not classified into statute law does not weaken their force in the particular case. " Presumptive evidence and the presumptions or proofs to which it gives rise are not indebted for their probative force to any rules of positive law; but juries, in inferring one fact from others which have been established, do nothing more than apply, under the sanction of the law, a process of reasoning, the force of which rests on experience and observation, and such inferences are presumptions of facts." (Justice v. Lang, 52 N. Y. 323, 329.) For example, an adverse inference may be drawn from the party's failure to call a witness under his power and control (Adams v. Davidson, 10 N. Y. 309; People v. Hovey, 92 N. Y. 554), or by withholding or suppressing a written instrument which he ought to produce (Whitney v. Sterling, 14 Johns. 215; Wylde v. No. R. R. Co. of N. J., 53 N. Y. 156; Timlin v. Standard Oil Co.,

126 N. Y. 514), or from the suppression of evidence by the destruction of books. (Armour v. Gaffey, 30 App. Div. 121; affd., 165 N. Y. 630.)

So, in this case, experience and the habits and customs of honest merchants and trades people would naturally lead to the conclusion that if a purchaser refused to verify his financial statement by his books something was crooked and that he was dishonest. Section 442 of the Penal Law has merely codified this natural presumption. The presumption is not conclusive. It may always be explained away, or the refusal to produce the books justified.

It is said, however, that this section requires the defendant to produce his books and thus compels him to be a witness against himself.

The section does not compel the defendant to produce his books. Having voluntarily given out to the world a copy of his books, the law affords him the opportunity to verify his statement by his books; if he fails to do so, the presumption is that falsity exists. He may still prove his books and verify the statement at any time or justify his refusal, and thus overcome the presumption. The fact that his refusal to comply with the section casts upon him the explanation is not compelling him to be a witness. All presumptions arising from facts cast upon the defendant the burden of overcoming them. Thus one in possession of stolen goods immediately after a larceny or a murder may be presumed to be guilty of crime and the burden of explanation be cast upon him. (People v. Galbo, 218 N. Y. 283.) And in some States this presumption is enacted into a statute. (Espy v. State, 32 Tex. 375; State v. Eubank, 33 Wash. 293.) The law which permits such presumptions does not compel him to be a witness against himself. Such is this case. This presumption of a fact reasonably arising out of other established facts is entirely different from a law requiring a defendant to produce his books or papers for

examination in a criminal investigation and making his refusal a crime. (People ex rel. Ferguson v. Reardon, 197 N. Y. 236.) If this statute had made the presumption conclusive — a presumption of law and not of fact — it would have been unconstitutional. (Boyd v. U. S., 116 U. S. 616.)

These conclusions are supported by People v. Adams (176 N. Y. 351). Referring to section 344b of the Penal Code, making possession of papers used in playing policy presumptive evidence of possession thereof knowingly and in violation of law, this court said, after quoting the above excerpt from People v. Cannon (*supra*): " The Legislature, in the section under consideration, has gone a step further and provided that the possession by any person, other than a public officer, of the various papers and writings used in carrying on, promoting or playing the game commonly called ' policy,' is presumptive evidence of possession thereof knowingly and in violation of the provisions of section 344a. In other words, the Legislature has cast the burden of proof upon the person who has in his possession these incriminating papers. The fullest opportunity is afforded him to rebut this statutory presumption. The exercise of this power is clearly within constitutional limitations and calculated to aid the People in prosecuting persons engaged in this form of gambling." (P. 361.)

These statutory presumptions are scattered through our Penal Law, and it is rather late to question their validity. For instance, section 1898 of the Penal Law makes the possession by any person, other than a public officer, of any of the weapons specified in section 1897 presumptive evidence of possession with intent to use the same in violation of law. Section 975 makes the possession of any papers used in a lottery presumptive evidence of the possession with guilty knowledge. Section 1746 of the Penal Law requires pharmacists and druggists to keep books which shall be open for inspection, and subdivision (j) thereof provides that every manufacturer of such substances

(cocaine or its salts), pharmacists and druggists shall keep an accurate record in a book kept for that purpose of all alkaloid cocaine disposed of by him, and the possession in the place designated in the record of an amount less than the difference between the total amount received by him and the amount shown by his record to have been disposed of shall be presumptive evidence of a sale of the amount of such substances not accounted for in violation of law.

The Conservation Law, (Cons. Laws, chap. 65) is full of presumptions. It gives the open seasons for birds, deer and other animals. Section 181 thereof provides as follows: " Possession of quadrupeds, birds or fish, or of parts thereof, during the time when the taking of the same in this State is prohibited, or when the possession of the same after the close of the open season is not permitted, shall be presumptive evidence that the same was unlawfully taken by the possessor." And section 182 makes a violation of the law a misdemeanor.

Section 393 of the Code of Criminal Procedure permits a defendant to testify in his own behalf, and in this respect modifies the law as it was prior to 1869. (People v. Courtney, 94 N. Y. 490.) " But," says the section, " his neglect or refusal to testify does not create any presumption against him." I know of nothing to prevent the Legislature from wiping out this last clause and thereby permitting all the natural inferences and presumptions of fact that spring out of the failure of the defendant to explain away damaging and inculpating testimony.

And the same natural presumption would arise, but for section 393, through the failure of the defendant to account for or produce his books when the evidence in the case indicated them to be false. The statute in this case goes no further than to say that under the circumstances stated the natural presumptions shall follow.

The relator in the present case says to the merchant; " I want a bill of goods; I have $20,000 to pay for them, and my books

show my possession of this $20,000, and here is a written state-
ment which I give you, being a copy of my books." The mer-
chant goes for his money, and the relator not only pleads
insolvency but refuses to permit him to compare the given
statement with the books or to show him the books containing
any such entries. What is the natural presumption? The
statute says that under such circumstances the presumption is
that the statements are knowingly false. It no more compels
the defendant to produce his books than all the other presump-
tions above mentioned compel the defendant to take the witness
stand to explain them away. It is always open to the defendant
to explain away the presumption by showing, through other
testimony than his own, the destruction or loss of his books, or
any other fact justifying his refusal.

It is said that the case of People v. Gibson (218 N. Y. 70,
34 N. Y. Crim. 318) is a barrier to these conclusions. This
case holds that the defendant cannot be compelled by subpœna
*duces tecum* to produce his books and papers in court, and that,
therefore, he cannot be requested in open court before the jury
to produce them. Such action would be similar to subpœnaing
the defendant to be a witness or asking him in open court to
take the stand, but nothing in the section of the Code under
discussion compels the defendant to be a witness against himself
or to produce his books and papers.

The presumption that his statements are false arises naturally
out of the other facts which must be proved, and the statute
merely authorizes a conclusion to which reasonable men would
arrive from these facts. So long as the presumption created by
the statute arising out of these proved facts is a logical deduc-
tion from them, or is reasonable and not arbitrary, the legisla-
tion is not constitutional. (Chamberlayne on Evidence, vol.
2, § 1119.)

The protection afforded the defendants under the principles
enunciated in People v. Gibson should not be extended beyond

the facts of that case.    It probably reached the border line. The establishment of a fact should be by the same methods and evidence in all classes of trials unless direct and clear constitutional or legislative enactment provides otherwise.

The order appealed from should be affirmed.

CHASE, CUDDEBACK and CARDOZO, JJ., concur; HISCOCK, Ch. J., COLLIN and HOGAN, JJ., dissent.

Order affirmed.