## SUPREME COURT — MONROE COUNTY.

### January, 1923.

## THE PEOPLE v. PAUL E. WAGNER.

(120 Misc. 214.)

(1) GRAND LARCENY, FIRST DEGREE—VARIANCE BETWEEN INDICTMENT AND PROOF—WHEN CERTIFICATE OF REASONABLE DOUBT WILL BE GRANTED.

A legal conviction can be had only for the crime of which the defendant is charged by indictment and by the means therein alleged.

(2) SAME.

The test to be applied upon a motion for a certificate of reasonable doubt as to whether a conviction for crime should stand is whether there

are questions of sufficient gravity to justify a review of them on appeal in advance of the imprisonment of the defendant.

(3) SAME.

An indictment in the first count charged that defendant on July 22, 1921, committed grand larceny in the first degree in that he obtained from a named bank the sum of $2,000 by color and aid of false pretenses made feloniously and with intent to defraud, particularizing that on July 22, 1921, before obtaining the money, defendant represented to the bank in writing and orally that the amount owing by his firm to other banks with whom he and his firm had accounts did not exceed $2,000 when in fact he and his firm were on that day indebted to three banking institutions in the amounts respectively of $3,500, $3,000 and $3,000. The indictment by appropriate allegations charged that defendant knew such statements were false and that in reliance upon them the bank paid over to defendant and his firm the $2,000 on July 22, 1921. The second count of the indictment was predicated upon the same statement in writing referred to in the first count, the veracity of which statement was attacked solely in respect to the indebtedness to the other banks and the offense was charged to have been committed on July 22, 1921. Only two statements in writing made by defendant and submitted by him to the complainant bank were proven on the trial, one in the form of an unsigned inventory and the other in which the inventory items had been transferred to a blank form supplied by the bank and signed by defendant with the name of his firm. Both statements gave the indebtedness of defendant's firm to other banks as of May 20, 1921. An attempt to connect the oral and written statements was abandoned upon the successful objection made by defendant's counsel, and the court upon the denial of a motion to dismiss the indictment upon the ground of a variance between the allegations thereof and the proof supplied by the written statement submitted both statements to the jury as a foundation for the crime charged, and in his charge directed the attention of the jury to the fact that there was no statement in writing as to the amount of the indebtedness to other banks on July 22, 1921, the date stated in the indictment. Upon a motion for a certificate of reasonable doubt made after judgment had been pronounced upon a verdict finding defendant guilty of the larceny only his counsel contended that whatever oral statements were made related to the indebtedness to the other banks and were of the same character in this respect as the written one and that both, therefore, related to the ability of the defendant and his firm to pay, and that the judgment of conviction could not be sustained upon the oral statement as section 947 of the Penal Law declares: ''A purchase of property by means of a false pretense is not criminal where the false pretense relates to the purchaser's means or ability to pay unless the pretense is made in writing and signed by the party to be charged.'' Upon granting the

motion, *held*, that the obtaining of the $2,000 was "a purchase of property" within the meaning of section 947 of the Penal Law which applied whether defendant obtained the money by false representations as to his financial condition or by falsely stating his ability to repay.

(4) SAME.

While it was necessary in order to support the second count to show that the amount owing to the banks on May 20, 1921, was falsely stated, it was also necessary in order to support the first or larceny count to prove that the indebtedness on July 22, 1921, was falsely stated. There being no written statement relating to debts existing at the latter date any representations about them were of course oral.

(5) SAME.

Upon direct examination the defendant testified in effect that he was ignorant of the amount of the indebtedness to other banks contained in the statement submitted by him to the complainant bank on July 22, 1921. *Held*, that in determining whether the misstatement was due to a mistake, arose through ignorance or was an intentional and purposed statement, it was competent under the second count of the indictment to reveal like conduct of defendant at other times.

(6) SAME.

The legitimacy of the use made of other written statements not affected in evidence, and the necessary inferences to be drawn from all the testimony concerning them, afford a proper subject for further inquiry in advance of the execution of the judgment of conviction.

MOTION for certificate of reasonable doubt.

*Ray F. Fowler, Assistant District Attorney,* for People.

*Louis E. Fuller,* for defendant.

STEPHENS, J.:

The defendant was convicted of the crime of grand larceny, first degree; and he was convicted also of a violation of section 1293-b of the Penal Law by obtaining property on credit by use of a false statement in writing respecting the financial condition and means and ability to pay of the firm of P. E. Wagner & Son, of which defendant was a member, under an indictment charging these two several crimes.

The larceny is alleged in the first count of the indictment to have been committed by the defendant on July 22, 1921, by obtaining from the Lincoln-Alliance Bank the sum of $2,000 by color and aid of fraudulent and false pretenses made feloniously and with intent to defraud. The particulars of the false pretenses are alleged to be that on July 22, 1921, before obtaining the money, the defendant represented to the bank in writing and orally that the amount owing by said firm to other banks with whom he and said firm had accounts did not exceed $2,000, when, in fact, the defendant and his firm were on that day indebted to the Union Trust Company, Traders National Bank and National Bank of Commerce in the amounts respectively of $3,500, $3,000 and $3,000.

The indictment contains the appropriate allegations that the defendant knew the statements were false and that the Lincoln-Alliance Bank in reliance upon them paid over to the defendant and his said firm the sum of $2,000 on July 22, 1921.

The second count in the indictment is predicated upon a written statement, " being the same statement in writing referred to in the first count of this indictment." Its veracity is attacked solely in respect to the indebtedness to the other banks above mentioned and the offense is stated to have been committed on July 22, 1921. It is not alleged, in the second count, that the defendant obtained any advantage by the statement, and it was not necessary to do so.

It was proven at the trial that the only written statements made by the defendant and submitted by him to the complainant bank were two in number, one in the form of an inventory and the other in which the inventory items had been transferred to a blank form supplied by the bank. Both statements gave the indebtedness of the defendant's firm to other banks as of May 20, 1921. The first mentioned one was not signed; the latter was signed by the defendant with the firm name, " P. E. Wagner & Son by P. E. Wagner."

There was, therefore, no statement in writing as to the

amount of the indebtedness to other banks on July 22d, the date alleged in the indictment, and to which the attention of the jury was directed in the charge of the court.

Testimony was given by officers of two of the creditor banks as to the indebtedness to them on both May 20th and July 22d. To one the debt had been diminished during the interval and to the other it had been increased. The indebtedness at the third bank was given only as of July 22d.

It was necessary in order to support the second count of the indictment to show that the amount owing to the banks on May 20th was falsely stated, and it was equally necessary in order to support the first or larceny count that the indebtedness on July 22d was falsely stated. There being no written statement relating to debts existing at the latter date any representations about them were, of course, oral.

The counsel for the defendant assigns as an error, among others, that the conviction for larceny cannot be sustained upon the oral statement of the defendant relating to his means and ability to pay, and founds this claim upon section 947 of the Penal Law.

The section cited provides that " A purchase of property by means of a false pretense is not criminal, where the false pretense relates to the purchaser's means or ability to pay, unless the pretense is made in writing and signed by the party to be charged."

Whatever oral statements, to be more fully examined later, were made, related to the indebtedness to other banks and were of the same character in this respect as the written ones. Both written and oral statements, therefore, related to the ability of the defendant and his firm to pay. The indictment so characterized them and the jury by its verdict has confirmed it.

It is next to be considered whether the transaction under scrutiny was " a purchase of property " within the meaning of the statute.

The statute has frequently been before the courts and has

been consistently applied. . Its enactment, in the phrase of Judge Cullen in People ex rel. Corkran v. Hyatt (172 N. Y. 176, 187), " was doubtless dictated by the knowledge that criminal charges of false pretenses are often instituted in reality to compel the payment of debt, and are easily fabricated."

In the cases where the statute has been successfully invoked merchandise had been bought by means of false representations of the buyer's financial resources. In the instant case money was obtained. Money is property both by definition (Gen. Const. Law, §§ 38, 39) and by common understanding. To obtain it by falsely stating one's ability to repay it does not differ essentially from buying merchandise by like means. If at the same time the defendant received the money, the bank had also sold to him securities or other articles of personal property owned by it, on credit, in reliance upon precisely the same oral statements that induced it to part with its money there could be no conviction for a larceny of the securities—a result so incongruous can be avoided only by holding that the statute is applicable to both forms of transactions.

The cases dealing with false representation, not relating to one's ability to pay, are numerous and I cite here only People v. Snyder (110 App. Div. 699), People v. Whiting (146 id. 98), People v. Cohen (148 id. 205), People v. Rothstein (180 N. Y. 148).

Now, to return to the oral statements. The defendant talked with Mr. Vay, an officer of the complainant bank, about a week before July 22d and showed him the unsigned written statement or inventory. Upon the trial Mr. Vay was asked whether on that day there was anything said about the amount of indebtedness which Mr. Wagner owed banks for borrowed money on notes on that day. The defendant's objection was overruled and the question was answered, " Yes, sir, he stated that he owed only $2,000 to the National Bank of Commerce." The witness was then asked, " Did he state that was all the money he owed to banks on notes payable on this day ? " and he

answered, " Yes, sir." Mr. Vay then testified to the conversation had on July 22d when the defendant came to the bank bringing the other statement with the items of the inventory transferred to appropriate spaces in the blank form that had been given to him by Mr. Vay on the earlier visit. The oral statements made on that date appear from the following questions and answers: " Q. Did you ask him about his indebtedness to other banks on that day ? A. Yes, sir. Q. What did you ask him ? A. I asked him what he owed the National Bank of Commerce on that day and he said two thousand dollars. Q. You asked him whether he owed any other banks ? A. I don't recall whether that question came up. Q. He stated that was the only bank he owed ? [Objected to. Sustained.] "

It is urged by the counsel for the People that these oral statements in connection with the written ones parallel People v. Levin (119 App. Div. 233, 235; affd., without opinion, 194 N. Y. 554). There a written report had been made to a commercial agency prior to the time that the property was purchased. The seller relied upon such statements as to the purchaser's ability to pay. At the time of the purchase when the report was called to his attention the defendant orally stated, in effect, that the written report was true at that time; that he was even in better condition, and the court held that the oral statement was not a false representation of the defendant's means or ability to pay but was a " false representation as to the then truth of a former written statement."

A kindred question was involved in People ex rel. Woronoff v. Mallon (166 App. Div. 840; affd., 222 N. Y. 456), where the sufficiency of an information was considered.

It will be observed that here in the testimony quoted there was no reference whatever to the written statements. The counsel had earlier in the examination of the witness framed an inquiry designed to connect the oral and written statements, but the attempt was abandoned upon a successful objection by the defendant.

The distinction between the two classes of oral representations to which reference has been made may seem to be fine spun; nevertheless it is vital alike both to the complainant and the defendant that the question be authoritatively settled, that the former may have a sure guide in the future and that the latter may not be punished for conduct that is not criminal.

Another error assigned is the reception of the testimony of the defendant on cross-examination and over objection by his counesl in regard to other statements made by him to the several banks in January, 1922, nearly six months after the loan was made by the Lincoln-Alliance Bank. It is apparent from the record that the examining counsel had written statements which were exhibited to the defendant and whatever representation of the amount of the indebtedness to other banks they contained must be gathered from the defendant's answers when questioned in that particular. The written statements were not offered in evidence although the use made of them was challenged by an objection of defendant's counsel. The defendant had testified upon his direct examination, in effect, that he was ignorant of the amount of indebtedness to other banks contained in the statements submitted by him on July 22, 1921, to the Lincoln-Alliance Bank. It was competent, therefore, certainly under the second count of the indictment, in determining whether the misstatement was due to a mistake, arose through ignorance or was indeed an intentional and purposed statement to reveal like conduct at other times. It was necessary that in order to establish guilty knowledge the similar transaction should be so connected in time and circumstance as to constitute but different manifestations of a single purpose or design to defraud and tend to support the existence of a wicked purpose on July 22, 1921. (Weyman v. People, 4 Hun, 511; affd., 62 N. Y. 623; Mayer v. People, 80 id. 364; People v. Everhardt, 104 id. 591.)

The January, 1922, statements were not so far as it appears used for the purpose of getting an increased credit. This,

however, is not important if otherwise competent. They were supplied at the request of the banks for reasons not stated but which can easily be surmised.

The legitimate use of testimony tending to show the commission of other crimes, and the limitations to which it is subject are adequately discussed in People v. Geyer (196 N. Y. 354) and People v. Thau (219 id. 39). When secondary evidence of such other offenses may be received is considered in People v. Dolan (186 N. Y. 4). The rules there stated to be applicable to the reception of secondary evidence may not, however, apply to the cross-examination of the defendant but only when such evidence is offered by the People in the first instance as a part of the affirmative proof.

The legitimacy of the use made of the written statements that are not part of the record and the necessary inferences to be drawn from all the testimony concerning. them affords a proper subject for further inquiry in advance of the execution of the judgment of conviction.

A third asserted ground of error is the admission of the testimony of the detective, a witness for the People, that he had before seen the defendant in New York city and had brought him back to Rochester. The only inference from this testimony is that the defendant had been previously arrested upon a criminal charge. It was, of course, incompetent. The trial court so held, ordered the testimony to be stricken from the record and directed the jury to disregard it.

While it may be presumed that, as a general rule, a jury will efface all prejudice that may have resulted from incompetent testimony when directed by the court to disregard it (People v. Barnes, 202 N. Y. 77), yet exceptions to the rule are recognized. (People v. Cohen, 148 App. Div. 205.) Whether or not the error is cured depends after all upon the associated circumstances. Standing alone in the present instance without other assignment of error it would probably be held to be un-

prejudicial to the defendant. ' The harmful effect of it is aggravated by the company it keeps.

It is elementary that a conviction can be had only for the crime of which the defendant is accused in the indictment and by the means therein alleged. (People v. Dumar, 106 N. Y. 502; People v. Corbalis, 178 id. 516; People v. Knapp, 147 App. Div. 436; People v. Alexander, 183 id. 868.)

The defendant is accused, as above observed, of larceny accomplished not by making a false statement as to his indebtedness as of May 20th but as of July 22d. The learned trial court denied the motion of the defendant to dismiss the indictment because of this variance between the allegations of the indictment and the proof supplied by the written statements and in the charge to the jury submitted both the written and oral statements as a foundation for the crime charged.

By due and timely objections the other grounds of alleged error were made available to the defendant.

Judgment was pronounced against the defendant upon the conviction of the crime of larceny only, and the foregoing considerations lead to the conclusion that the application for a certificate of reasonable doubt should be granted and the judgment reviewed before the defendant is deprived of his liberty.

It may be observed that this result does not carry any suggestion of the defendant's innocence. The test upon applications of this character is whether there are questions of sufficient gravity to justify a review of them by the appellate court in advance of the imprisonment of the defendant. (People v. Martin, 91 Misc. Rep. 107; People v. Todoro, 160 N. Y. Supp. 352.)

The particular rulings at the trial believed to be erroneous are indicated in this memorandum with sufficient clearness to enable the defendant's counsel to prepare the appropriate certificate.

Ordered accordingly.